UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>FULANI HASAN TAHRIKE HERROD,<br><br>Defendant. | Case No. 26-MJ-53 |

GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PRETRIAL DETENTION FOR DEFENDANT FULANI HASAN TAHRIKE HERROD

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that Defendant Fulani Hasan Tahrike Herrod (hereinafter "Defendant") be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E) (Firearm/Other Dangerous Weapon) of the Bail Reform Act. On March 8, 2026, Defendant illegally possessed a ghost gun with an extended magazine as he fled from law enforcement in a stolen car, crashed that stolen car, and then led law enforcement on a foot chase before he was ultimately arrested. In addition to recovering the defendant's firearm from the stolen car, officers recovered a backpack that held a variety of controlled substances – including material that field tested positive for cocaine base and opiates – baking soda, and empty plastic bags. Considering the factors specified under 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure his appearance in court and the safety of any other person and the community.

BACKGROUND

On March 8, 2026, at approximately 9:50 p.m., United States Park Police ("USPP") Officer Evian Vega was monitoring Metropolitan Police Department ("MPD") 3D radio during

1

a surge patrol / high visibility patrol of the area (due to being a MPD hotspot for criminal activity) and heard units call out the FLOCK license plate reader notification for a stolen vehicle. This activity was recorded on USPP's CAD. At approximately 9:46 p.m., a FLOCK camera that was located in the area of 1790 Columbia Road NW, Washington, D.C. registered a stolen vehicle was traveling eastbound near the 1700 block of Columbia Rd NW, Washington, D.C. The vehicle was a black BMW four-door sedan bearing Maryland tags and had been reported stolen out of Maryland.

Officer Vega, driving a marked USPP cruiser, located the stolen vehicle near the intersection of 16th Street and Irving Street NW, and activated his emergency equipment to attempt to stop the vehicle. The driver of the stolen vehicle (hereinafter, the "Suspect") was the sole occupant of the vehicle. The Suspect disregarded Officer Vega's lights and sirens and attempted to flee in the stolen vehicle. Officer Vega initiated a vehicle pursuit. The Suspect proceeded to disregard multiple traffic control devices, was driving at a high rate of speed, drove the wrong way on the street, and collided with multiple parked vehicles.

The pursuit ended after the Suspect drove over a curb and struck a D.C. parking sign, causing disabling damage to the stolen vehicle at the intersection of 14th Street and Military Road NW. Officer Vega unholstered his service weapon and displayed it toward the Suspect. Officer Vega ordered the Suspect to have his hands visible and to step out of the car. Officer Vega then instructed the Suspect to face away from him, to drop to his knees, and to place both hands on top of his head.

As Officer Vega approached the Suspect to place handcuffs on him, the Suspect stood back up and attempted to flee on foot. The Suspect traveled westbound on Military Road NW, jumped over a stone wall, and then traveled southbound through a grassy area. The Suspect

finally stopped in front of a driveway to a private residence on Missouri Ave NW and dropped to his stomach. Officer Vega then handcuffed the Suspect with the assistance of MPD.

Officer Vega then conducted a search incident to arrest and recovered the following items from the Suspect's person: a BMW key fob, a BMW digital key, debit/credit cards, a Maryland driver's License, and multiple denominations of U.S. currency totaling $170. Officer Vega identified the Suspect as Defendant by his Maryland driver's license and placed Defendant in the rear of his patrol cruiser.

MPD officers assisted in securing the stolen vehicle. The driver's door of the vehicle was open, and in plain view on the driver side floorboard was a blue and black handgun.



*Figure 1*

Officer Vega conducted a search of the vehicle. Officer Vega recovered the firearm and determined it to be a Polymer80 9mm handgun with no serial number, loaded with one round of 9mm ammunition in the chamber and six rounds in the 17-round capacity magazine.



*Figure 2 & 3*

Additionally, Officer Vega recovered a black Nike backpack that was located behind the driver seat (rear passenger compartment) floorboard. Upon a search of the backpack, Officer Vega recovered:

    a. 12 clear plastic bags of a green leafy substance (consistent in appearance with marijuana) placed in one large clear plastic bag, weighing 371.40 grams;

    b. 12 additional clear plastic bags of a green leafy substance (consistent in appearance with marijuana), weighing 330.3 grams;

c. Eight clear plastic bags twisted in a knot containing a white rock like substance, which field tested positive for cocaine/crack and weighed approximately 63.9 grams;

d. Two 1lb orange boxes of Arm & Hammer baking soda;

e. A green and wooden small glass container labeled as "Whole Melt extracts," weighing approximately 112.2 grams;

f. 57 brown capsules containing a pinkish and white powdery substance, which field tested positive for opiates and weighed approximately 47.7 grams;

g. Approximately 360 pink pills with several broken pieces inside a CVS Health B-12 labeled bottle, weighing approximately 100.3 grams;

h. Two clear zips containing a large quantity of small blue zip bags.

i. An additional Maryland license plate registered to the owner of a white 2015 Kia Forte, not in Defendant's name.



*Figure 4*

At the time of his arrest, Defendant had previously been convicted of a crime punishable by more than one year in prison, specifically in Montgomery County, Maryland Circuit Court Case Number C-15-CR-23-001115, where Defendant was convicted of Loaded Handgun in Vehicle, Attempt by Drive to Elude Uniformed Police by Fleeing on Foot, and two related traffic offenses. On March 25, 2024, the defendant was sentenced to 2 years of incarceration, with all but 5 days suspended on the Loaded Handgun in Vehicle conviction. Accordingly, Defendant would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he was possessing the firearm and ammunition.

On March 9, 2026, Defendant was initially charged for the instant conduct in the Superior Court of the District of Columbia for Fleeing a Law Enforcement Officer, Unlawful Possession of

a Firearm (Prior Conviction), and Carrying a Pistol Without a License (Outside Home or Place of Business), under case number 2026 CF2 003542. On March 11, 2026, the Government charged Defendant by complaint in the U.S. District Court for the District of Columbia. Defendant was charged with Unlawful Possession Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1), and Unlawful Possession of a Firearm by a Person Previously Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of D.C. Code § 22-4503(a)(1).

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*,

7

798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210 and *Williams*, 798 F. Supp. at 36.

The Government seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving possession of a firearm). The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or Defendant's return to Court should he be released. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

I.  **The Nature and Circumstances of this Offense Merit Detention.**

The scourge of guns like the one that Defendant possessed fundamentally threatens this community's safety, and this Court has repeatedly warned against discounting the inherent danger associated with loaded guns. *See United States v. Blackson*, 2023 WL 1778194, at *7-8 (D.D.C. Feb. 6, 2023), *aff'd,* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023) (explaining that the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"), *aff'd,* No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023); *see also United States v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (Faruqui, M.J.) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020).

8

This crime presents a particular danger to the community for several reasons. First, Defendant was driving a black BMW four-door sedan that was reported to be stolen. Second, when law enforcement attempted to stop the vehicle, Defendant fled at a high rate of speed, drove the wrong way on the street, collided with multiple parked vehicles, and disregarded multiple traffic control devices. Third, Defendant continued to endanger the public until he drove on to a curb and struck a D.C. parking sign, causing the stolen vehicle to be disabled. Fourth, Defendant continued to ignore law enforcement commands when he stood up and fled on foot as Officer Vega attempted to handcuff him. Fifth, the Polymer80 9mm handgun was recovered on the floorboard of the stolen vehicle with no serial number to identify the registered owner, 1 round of ammunition in the chamber, and six rounds in a large-capacity magazine. Sixth, a black Nike backpack found behind the driver seat floorboard, contained evidence consistent with controlled substances. Particularly, law enforcement recovered 24 clear plastic bags of a green leafy substance, consistent with marijuana, weighing approximately 701.7 grams, in total. The Nike backpack also contained: (1) 63.9 grams of a white rock like substance, which field tested positive for cocaine/crack; (2) 47.7 grams of a powdery substance that field tested positive for opiates; (3) approximately 360 pink pills inside of a CVS Health B-12 labeled bottle, weighing approximately 100.3 grams; and additional evidence indicating drug distribution, to include Arm & Hammer baking soda and a large quantity of small blue zip bags. Seventh, the Nike backpack had a Maryland license plate that was registered to a white 2015 Kia Forte, not in Defendant's name. The facts of the instant case indicate that Defendant not only possessed a firearm but also operated a vehicle that did not belong to him, drove the vehicle in a manner that endangered lives and caused property damage, had the license plate of another vehicle that did not belong to him, and had evidence of controlled substances within the stolen vehicle that he drove.

The Court has repeatedly held that even the possession of an illegal firearm poses a risk of danger to the community. *See, e.g.*, *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases and holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

Defendant's possession of a firearm, despite his status as a convicted felon, demonstrates either an inability or unwillingness to comply with the District of Columbia's firearms law. Even more troubling, Defendant is no stranger to disregarding law enforcement commands. As discussed in greater detail below, on March 25, 2024, Defendant was convicted of Loaded Handgun in Vehicle, Attempt by Drive to Elude Uniformed Police by Fleeing on Foot, and two related traffic offenses, an offense that involved a loaded firearm and eluding law enforcement officers. Defendant nevertheless unlawfully obtained yet another firearm, a firearm that was notably lacking a serial number and cannot be traced – after sustaining convictions that clearly prohibited him from possessing one. This pattern of conduct underscores Defendant's continued disregard for the law and demonstrates that he cannot be trusted to comply with any conditions of release.

The danger posed by firearms, such as the one recovered here, cannot be overstated. It is

also particularly concerning that Defendant kept a firearm unsecure on the floor of a moving vehicle traveling at excessive speed with one round in the chamber and six additional rounds in the magazine. Further, Defendant created an even greater risk to himself, the community, and the officers involved in his arrest by driving on the wrong side of the street, driving over a curb, and then crossing multiple lanes of traffic while fleeing from law enforcement officers on foot. Defendant's conduct emphasizes his disregard for court-ordered rules and laws regulating his conduct in regard to contraband, especially in light of his prior convictions involving firearms. Accordingly, this factor favors detention.

## II.     The Weight of the Evidence Against Defendant Favors Detention.

The second factor to be considered—the weight of the evidence—also favors detention. The Government's case against Defendant is strong.[1] Officers located a firearm on the driver side floorboard, directly where Defendant had been sitting to drive the stolen vehicle.

Law enforcement body camera footage shows the firearm on the stolen vehicle's driver side floorboard as Defendant steps out for his arrest. A closer view of the weapon on the driver side floorboard was captured on law enforcement body worn camera footage, after Officer Vega engaged in a foot chase and returned to the vehicle. "[I]f the evidence against a defendant is

---

[1] Here, the weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-50 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang*; this factor should be given no less weight.

overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30.  So it is in this case: the weight and strength of the evidence increases the prospect that Defendant will present a danger to the community if released.

### III.  Defendant's History and Characteristics Also Favor Detention.

The third factor—the history and characteristics of the defendant—also favors detention. According to the Pretrial Services Report, Defendant has two prior adult convictions, originating from one case.

On March 25, 2024, Defendant pled guilty to Loaded Handgun in Vehicle, in violation of Md. Code Ann. § 4-203(a)(1)(v), and Attempt by Drive to Elude Uniformed Police by Fleeing on Foot, in violation of Md. Code Ann., Transp. § 21-904(b)(2).  The Loaded Handgun in Vehicle conviction requires that the defendant wear, carry, transport, or knowingly transport, whether concealed or open, on or about the person, or in a vehicle traveling on a road or parking lot generally used by the public, highway, waterway, or airway of the State, a handgun loaded with ammunition.  Md. Code Ann. § 4-203(a)(1)(v).  A defendant cannot be convicted of this offense if the defendant was issued a permit to wear, carry, or transport the handgun.  *Id.* at (b)(2).  The Attempt by Drive to Elude Uniformed Police by Fleeing on Foot conviction requires that a police officer give a visual or audible signal to stop a defendant while the officer is in uniform, prominently displaying the police officer's badge or other insignia of office, and a defendant flees on foot.  Md. Code Ann., Transp. § 21-904(b)(2). Based on the statutory language of Defendant's prior convictions, Defendant has been convicted of a crime that has similar, almost identical, facts

to the instance case. Defendant has been convicted of offenses where he was found to have worn, carried, or transported a firearm in a vehicle travelling on a public highway, waterway or airway. Defendant also fled from law enforcement officers, resulting in a conviction for his conduct.

Defendant's history of criminal convictions indicates that there is no condition or set of conditions that can reasonably assure his presence and the safety of the community. He was just convicted of similar dangerous conduct in 2023. For these reasons, Defendant's repeated criminal history and characteristics favor detention.

**IV.     Defendants Present a Danger to Our Community.**

The fourth and final factor—danger to any person or the community posed by Defendant's release—similarly weighs in favor of detention. The D.C. Circuit has noted that "[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community," pretrial detention is available to "disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This factor requires the Court to make a "forward looking determination" about the defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that the defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Focusing on the circumstances here and looking forward, Defendant's conduct shows a repeated, flagrant, and unjustifiable disregard for the safety of the community. First, Defendant's conduct jeopardized members of the community as he fled from law enforcement at a high rate of speed, driving down the wrong side of the road, and colliding with parked vehicles. Defendant could have hit a pedestrian or another driver, causing severe injury or death. In addition, Defendant

left a firearm on the floorboard of a stolen vehicle, near his feet. The firearm was not secured and could have very well discharged, putting the public and the law enforcement officers that pursued him at risk. In addition, Defendant has two prior convictions in Maryland in which a firearm was recovered, while Defendant operated a vehicle. Defendant's history is an indication of how he would perform on supervision if he were released in the instant matter. He continues to commit the same crime. Given Defendant's history with guns, his conduct portends continued possession of illegal firearms. Accordingly, this factor also favors detention.

## CONCLUSION

The Government respectfully requests that the Court issue an Order granting its motion that Defendant be held without bond pending trial.

Respectfully submitted,

Jeanine Ferris Pirro
United States Attorney

By: /s/ Ursula Simmons
Ursula Simmons
NY Bar No. 5816061
Special Assistant United States Attorney
Federal Major Crimes Section
United States Attorney's Office for D.C.
601 D Street NW, Fifth Floor
Washington, D.C. 20530